IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Cr. No. 19-1434-JB |
| **LYRON WOOLRIDGE**, | ) ) |
| Defendant. | ) |

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION
TO PRESENTENCE REPORT AND SENTENCING MEMORANDUM**

The United States hereby submits its response to objections by the defendant, Lyron Woolridge, to the Presentence Investigation Report ("PSR"). The defendant disputes the PSR's application of the enhancement for possession of a firearm under USSG § 2D1.1(b)(1), and the enhancement for using a firearm as a credible threat of violence under USSG § 2D1.1(b)(2). (*See* PSR ¶ 23 and 24.) These enhancements are proper because preponderant evidence shows that the defendant intentionally used the firearms to threaten violence to an individual he had just sold narcotics to because he thought he/she was a snitch. The United States respectfully submits that the Court should overrule the defendant's objection and adopt the PSR's application of the enhancements. The United States further requests a mid-range guidelines sentence.

**BACKGROUND**

The defendant was charged in a one-count indictment with Distribution of 50 grams and more of a Methamphetamine occurring on or about April 16, 2019 in Bernalillo County, New Mexico. On April 16, 2019, Drug Enforcement Administration ("DEA") agents and TFOs arranged for a controlled buy to occur between a confidential informant (CI) and the defendant. (PSR ¶10).

The CI picked up the defendant from the defendant's residence and drove him to the Best Choice Inn. *Id*. The defendant entered room 116, which was registered to Larry Woolridge, the defendant's uncle, and an employee of the motel. *Id*. Larry Woolridge had sold methamphetamine to the CI on April 1, 2019. *Id*.

While Woolridge was in room 116, an undercover agent (UA) arrived at the motel on a bicycle and made contact with the CI. They both then entered Larry Woolridge's room (room 116). *Id*. ¶11. Then the three of them traveled to a separate location in Albuquerque by vehicle, leaving the UA's bicycle in Larry Woolridge's room. *Id*. The drug transaction happened at the second location and involved approximately 97 grams of methamphetamine. *Id*. The UA was then dropped off at a nearby Applebee's restaurant, and the CI agreed to retrieve the UA's bicycle from Larry's room and bring it to the UA. *Id*, ¶12. Upon arrival back at the Best Choice Inn, the CI went to Larry's room to retrieve the bike while the defendant stayed in the car. While the defendant was waiting in the car, he was approached and spoken to by Jonathan Craft, a manager at the Best Choice Inn, who is currently under federal indictment for charges related to Sex Trafficking and Maintaining a Drug-Involved Premise in case number 19-CR-1631 KWR. *Id*. When the CI came back out to the vehicle with the bike, the defendant was adamant that he/she go back to Larry's room with the defendant so the defendant could show the CI how to "cut" the drugs. *Id*.

After going back to room 116, Larry Woolridge and the defendant whispered to each other before turning to the CI and asking him/her if he/she was a "snitch." The CI denied the accusation. *Id*. ¶ 13. Larry Woolridge then reached under his bed and pulled out a couple of "big guns" and laid them on the bed. *Id*. The CI again denied being a "snitch." *Id*. Both the defendant and Larry Woolridge checked the CI for any recording devices and did not find any. *Id*. The CI was allowed

2

to leave to return the bicycle, but the defendant told the CI he was going to go with him/her. *Id*. ¶ 14. Due to safety concerns for the CI, the vehicle was stopped by law enforcement. *Id*, ¶ 15.

The defendant pleaded guilty to the indictment, alleging a violation of 21 U.S.C. § 846 and Possession with Intent to Distribute 50 Grams and More of a Mixture Containing Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

## ENHANCEMENT UNDER USSG § 2D1.1(b)(1)

When a defendant is convicted of a drug-related offense, the Guidelines provide a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D1.1(b)(1). The enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, cmt. n.3. "The government bears the initial burden of proving possession by a preponderance of the evidence." *United States v. Smith*, 131 F.3d 1392, 1400 (10th Cir. 1997). This initial burden may be satisfied by showing mere proximity to the offense. *Id*. Furthermore, this burden may be met when the evidence shows a weapon was located near the general location where at least part of a drug transaction occurred. *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001). "Possession of a weapon in connection to a drug trafficking offense 'is established if the government proves by a preponderance of the evidence that a temporal and special relation existed between the weapon, the drug trafficking activity, and the defendant.'" *United States v. Alexander*, 292 F.3d 1226 (10th Cir 2002) (*quoting United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993).

In *Heckard*, the firearm at issue was found in the defendant's apartment twenty-four days following the defendant's last documented drug activity. *Heckard,* at 1233. Evidence presented showed the gun was possessed in a location that was repeatedly the locus for drug trafficking, next

to drug paraphernalia and physically near Defendant. The Tenth Circuit ruled that these facts are enough to merit the enhancement. *Id*.

In the defendant's case, the firearms stored in the defendant's uncle's bedroom were taken out when the defendant and his uncle were concerned that the CI was a government informant. The concern arises from the fact that the defendant and CI had just been involved in a methamphetamine deal in the hour(s) earlier. This timeline is vastly more temporal than the 24 days that had passed in *Heckard*. Furthermore, room 116 had been a meeting spot to commence drug deals on multiple occasions as observed by law enforcement. The CI was lured inside on representations that the defendant was going to show him/her how to "cut it." The defendant and his uncle whispered about matters prior to taking out the guns and showing them to the CI, showing that the defendant intended that the guns be pulled out.  Had they not been engaged in methamphetamine sale, there would be no cause for concern that the CI was in fact a CI. It is not clearly improbable the weapon was connected to the offense. It was used to coerce silence on the part of an individual the defendant feared would expose his drug dealing to law enforcement.

The Court should overrule his objection to the PSR's application of USSG § 2D1.1(b)(1).

### ENHANCEMENT UNDER USSG § 2D1.1(b)(2)

This enhancement is also properly applied under the same circumstances as 2D1.1(b)(1), in that the threat of violence must be connected to the offense. Here, the defendant argues that the act of taking the guns out when questioning the CI as to whether he/she was in fact a CI does not amount to a real threat of violence, and therefore the enhancement should not apply. Doc 51, at 4-5. However, the United States asserts that taking out the "big guns" and laying them on the bed in front of an individual they are accusing of being a "snitch," taken with the surrounding circumstances, does amount to a threat of violence.

In *United States v. Redifer*, 631 Fed. Appx. 548, 563-4 (10th Cir. 2015), the Tenth Circuit analyzed a fact pattern regarding whether there was violence or a credible threat of violence in relation to the collection of a drug debt. They found that testimony that co-defendants apparently took the indebted person to another location, and the defendant contacted another person as somewhat of a scare tactic to get an explanation of whereabouts of the owed money, and that the defendant possessed a gun during an incident where he threatened the indebted individual for payment of his outstanding drug debts was evidence of a credible threat of violence. *Id*.

This is not dissimilar to the facts of the defendant's case. Based on the chain of events, it should be reasonably inferred that Best Choice Inn Manager Jonathan Craft communicated to the defendant the possibility that the CI was a "snitch" while he/she was inside room 116 getting the bike. This is what prompted the defendant to insist that the CI go back into room 116 with him after the retrieval of the bike. When the defendant gets the CI back in the room, he informs Larry Woolridge when they are whispering that Craft suspected the person to be a CI. At that point, the two clearly intended to threaten the CI by taking out the guns to show to him/her. There is no other plausible reason for this, there was no gun deal, there is no evidence the CI was dangerous to the defendant or to Larry Woolridge. Such conduct was foreseeable to the defendant, given the chain of events that had just transpired. At the same time, they accused the CI of being a "snitch." This Court knows that being outed as an informant is dangerous business, especially when one finds themselves alone in a room with two people who make such accusations while displaying two "big guns."

The intimidation and threat continued when the defendant and Larry Woolridge inspect the CI's body for a recording device. The implicit message conveyed by the defendant is that if a recording device was found, the guns were going to be used. When they did not find a recording

device, they allowed the CI to leave the room, but the defendant insisted on driving with him/her. The fact that the CI was not free to go by him/herself indicates some level of restraint by the defendant based on the events that had just occurred inside room 116.

Therefore, this case did involve a credible threat of violence, and the enhancement should remain.

## UNITED STATES' REQUEST FOR SENTENCE

The defendant's offense level is calculated at 31, and the criminal history category is III. Therefore, the applicable guidelines range is 135 to 168 months.

1. Nature and Circumstances of the Offense

The Court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §3553(a)(1). The defendant engaged in the sale of approximately 97 grams of methamphetamine to an undercover officer. When he became concerned that there was a "snitch" in his presence, he threatened that person with firearms, and intruded upon his/her personal space to search for a recording device. Law enforcement was so concerned for the CI's safety that they had to cut the investigation short and initiate a traffic stop on the defendant.

2. History and Characteristics of the Defendant

While defendant's criminal history is not the lengthiest to come to the attention of this court, the defendant's criminal history is certainly serious and violent. His one felony conviction is for attempt to commit first degree murder in 2013. (PSR ¶35). Though the total court jurisdiction on this conviction was eleven and a half years, he was only initially sentenced to three years in prison with five years' probation. *Id*. It appears that the defendant shot a person out of sheer rage that resulted form being asked to leave a nightclub. *Id*. This crime indicates that the

defendant has no concern for anyone's safety.

After serving the initial three-year sentence, the defendant could not abide by his conditions of probation and was remanded again in 2015, 2017, and 2018 for violations. *Id*. His probation was unsatisfactorily discharged in October 2020. *Id*. Given the timing of this case, he didn't wait long after being released from custody to begin selling methamphetamine.

The defendant also has several arrests that did not result in convictions. These also indicate a tendency to do violence, and should not be overlooked in assessing his history. *See Id*. ¶¶ 41-43.

3. Factors Detailed in 18 U.S.C. § 3553(a)(2)

In addition to considering the nature and circumstances of the offense and the history and characteristics of the defendant, the Court shall also consider:

> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant, and'
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Defendant was in possession of a large amount of methamphetamine. The social impact of that much methamphetamine cannot be readily measured, and meth addiction is a growing problem in our country. Furthermore, there is nothing about the defendant that should excuse him from a guidelines sentence. He is a repeat offender, and he is dangerous. He shows no signs of giving up his criminal and violent lifestyle.

A mid guideline sentence would adequately deter criminal conduct by sending a message to the criminal element of society that there are serious penalties for trafficking methamphetamine. Furthermore, it would communicate to the Defendant himself that this crime

will be assessed a serious punishment, and his days of being constantly let out of custody are over.

4. Avoiding Unwarranted Sentence Disparity

A guidelines sentence will avoid any disparity in this case. A mid-range sentence is presumed reasonable, a presumption which is underscored by the defendant's violent past.

## CONCLUSION

For the reasons given above, the evidence supports the PSR's application of the enhancements under USSG § 2D1.1(b)(1) and (2). The United States respectfully requests that the Court overrule the defendant's objections and adopt the correctly calculated Guideline range in the PSR. The United States further requests a mid-range guidelines sentence in this case.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*Electronically filed October 20, 2021*
LETITIA CARROLL SIMMS
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico  87103
(505) 346-7274

I CERTIFY that a true copy of the foregoing
pleading was provided to opposing counsel
of record, via CM/ECF this 20TH day of
October, 2021.

_____/s/_____
LETITIA CARROLL SIMMS
Assistant United States Attorney